Laney Chiropractic v. Nationwide Mutual Insurance. You may be seated. The District Court in this matter stated the correct standard for analyzing the duty to defend, but then we submit it preceded in its application that standard to misapply it. Just as a brief overview, it noted that under the law it must look at the allegations and not the title or the labels of the claims, but then it seemed to proceed to rely on the label trademark infringement in one of the claims and scattered throughout some of the others as determinative. The court noted that it cannot make a determination of facts in its analysis, but then it proceeded to take a situation where there are mixed allegations, some of trademark infringement and others of covered allegations of trade dress and slogan infringement and misappropriating of ad, took a mixed situation and made a finding of fact that these all arise out of trademark infringement. And finally, it noted that it must make any reasonable inference in favor of coverage and not in favor of exclusion, but that's exactly what it did. It made an inference that all of these allegations together arise out of trademark infringement and exclusion. The policy itself covers personal injury and advertising injury, and under item F of that coverage that includes using another's advertising idea in your ad or infringing in your ad on The district court again lumped all of these together, the allegations as trademark infringement, and said they arose out of. And, in fact, it made a statement in its decision that if the website was confusing or similar, it was because it used the trademarks. That's what pulled out the finding. Well, in fact, the complaint, the first amended complaint, actually alleges that after removing the marks from the website, the descriptions nevertheless remained so similar or synonymous that it confused the customers. So after taking the marks out, and I would refer you to Record on Appeal 408, paragraph 49, where it says the updates to NCS and Laney Chiropractic's websites to merely replace ART or active release technique, those are the marks, with STT or soft tissue technique is false or misleading because the descriptions are still of ART's patented system and treatment. Why isn't that just alleging that they described the product that they'd misappropriated? There's no — where's the suggestion in that paragraph of the complaint that they appropriated one of ART's advertising ideas? Well, that's one possible route to coverage, but trade dress is the other. Okay. But do you — The descriptions are trademarked. Let's start with the advertising idea. What paragraph would you point us to where — For the advertising idea? Where the allegation is that you took their advertising idea. Okay. So I would refer you to Record on Appeal page 404, paragraph 24, where ART in its first amended complaint is describing a software application it had made, which it calls the EPN program. It says, which is also a web-based application used exclusively by ARTCS to manage its communications with its customers. So that's their website. That's paragraph 24. Then if you skip over to paragraph 36, Record on Appeal 406, it says, upon information and belief, without the ART company's knowledge or authorization, the NCS program — that's Laney's — was copied from the EPN program. Okay. So Laney's Web's copying ART's Web, which it uses to communicate with its customers. That's advertising. The web, by definition — The latter points aren't stated in the paragraph, which it uses to communicate or solicit business or promote. That's what it said in the paragraph I read you just before this. Soliciting business or promoting. It says to communicate with customers. And a web — the web, by definition in the policy, is considered advertising. Use of the web isn't advertising. That's specific to the definition. Okay. And it says — it says, continuing on this paragraph 36, because another, in my view, erroneous focus by the district court was on whether the visual appearance was the same, as if words aren't enough when you're describing a service. I take issue with that. But if you want visual, paragraph 36, again, continuing, says the NCS program is a copy of the EPN program, with only minor adaptations primarily for branding or cosmetic purposes. There's your visual connection. That they're so similar with just minor variations for cosmetics. So you've got both visual if you need it. I would submit you don't need it for an advertising idea. If you can't use words as advertising to describe your service, I think that's just — that's a non-starter. It doesn't have to be an image when it's a service. It's easy with a product. But, I mean, words can be the advertising, but words, all words, all descriptions are not advertising. No. And that's a point, Your Honor, that, again, I think the court missed the point there as to whether — because the court relied primarily on this court's decisions in testmasters and sports supply. Sports supply dealt with only one word trademark, McGregor, use on a product. And this court said, well, that use of the trade name or the trademark of your competitor just on a product you're trying to capitalize on that goodwill with is not advertising in and of itself. The court was looking for some description of services, something beyond, and we've got services here beyond the mark. In fact, here we've got the mark was taken out of the web ad, but the service descriptions were left in the advertising. So it's completely different than sports supply. In testmaster, again, you've got the opposite of what you've got here, because in testmaster the descriptions were taken out of the amended complaint, leaving only the trademark, testmaster. Let me ask you a question, and this is — I'm sure it's a dumb question because it just popped into my head, but — so you're trying to argue that the allegations are that your client adopted their web page and that this is tantamount to advertising and the insurance policy should cover it. At the same time, aren't you giving away an awful lot vis-a-vis your infringement — the fact that you're going to be depending on the other side? I'm not sure I understand. Well, if you're borrowing everything, are you not violating their trademarks? Well, that's the allegation, that one of the claims is for trademark infringement. Right. Okay, but there's also a Lanham Act claim, which is a traditional trade dress claim. There's an unfair competition claim, and by the way — Well, your web page is their web page, and you say, hey, that's — never mind, I'm sure — Well, let me first of all say that no question by a Federal Circuit judge will I consider dumb. Well, I appreciate — But I'm perhaps dumb in my response. But I know it's not true, so just go on. On your earlier point, if we remove art, you know, applying sports supply to say that that wouldn't be advertising, what's the service description that the complaint alleges they used that you used? They say that our descriptions of soft tissue technique, soft tissue system, were synonymous. But is there any allegation in the complaint that they used soft tissue technique in their advertising? Well, they say they're synonymous with their own descriptions, and so I think it's a reasonable inference if they got a website. First of all, they're alleging that the public is confused. If the public's confused, you've got to reasonably infer they're also advertising. They're getting the word out, and they say here they use a web to communicate with customers. I don't see how just the fact that they imply public's confused means that you've got an advertising case. Well, how else is the public going to be confused if they're not already — What's your best case for that proposition? Well, JEMI, the JEMI court, said that trademark and trade dress inherently involve advertising because it's consumer confusion. But you're accepting that Texas law is different and narrower, as we said, in sports supply. Well, I would submit sports supply only provides a qualification to the extent it uses only the mark. Sports supply did not address what happens when you're also mimicking the description of services. That's trade dress. That's the appearance of the service. You're mimicking it. And let's get one thing — I think we need to be clear. Advertising, the advertising — use of the advertising or copying the advertising only goes to the misappropriation of ad part of that coverage. The second part of it is, or if in your ad you infringe the trade dress of another. So I don't have to show you that my trade dress is a copy from their ad description trade dress for that prong of the coverage. I just have to show you it's alleged that the way we advertise these descriptions infringes their trade dress. That's the similarity of the description. And again, what paragraph do you say most clearly defines the distinctive trade dress that ART had that you have? Just — you don't even have to read it. Just the paragraph. Well, paragraph 38, how it works, the conditions it treats. That describes ART's distinctive style or motif, other than just describing the functionality? Paragraph 32 says promoted and advertised as providing the same services as ARTCS. If they're the same, they're the same. That means ART was also using the same descriptions as — I guess I'm going around and around. But is saying the same doesn't describe to me what ART would be implying as their distinctive look and feel that then you copied. It's just — you're just saying — they repeatedly say you did the same thing. Is there anything — The same thing or the same description, Your Honor. If I'm describing them this way and they say those are the same, those are their descriptions, too. I would submit that all of the allegations from paragraphs 39 through 49, which is Record on Appeal 167 to 69 and also 406 to 408, outline the similarities in both of their descriptions that they say these are still the descriptions of ART's system and treatment. The other thing that I think the Court ignored altogether was the exception. I mean, we're talking about an exception to an exclusion here for a trade dress and slogan. And the Court just kind of roughly wrote over that exception. In one instance, citing Hugo Boss saying, well, it's not a trademark slogan. Hugo Boss dealt with a policy that said trademark slogans are covered, not just slogans. It's this policy. And by the way, going back to Testmasters, that was a different policy also. That policy didn't say anything about trademark infringement. The Court just assumed that was not covered and was looking for whether they had trade dress allegations in front of it. But the fact of the matter is there's no requirement for slogans to be trademarked here to be covered. In fact, if that were a requirement, then you'd have a conundrum because the policy excludes trademark but covers slogan. I submit it can be both. For example, I would say active release technique here, which was one of the trademarks, is a slogan because the case law says it's defined as a catchphrase designed to draw attention to the service. Now, the Court said, well, it's just a description of service as well. I would submit a slogan isn't very effective if it's not drawing attention to your service by some connection with it. For example, let's say Testmasters. Testmasters is a trademark but also would be a description of the service because they were masters at preparing for test taking. That'd be an example of both. And the Court totally missed the fact that where you've got a mix of allegations, some of trade dress, some of trademark infringement, some of slogan or whatever, there's a duty to defend because you can't make a finding at that stage whether they're concurrent causes or whether one was the predominant cause improper in the duty to defend analysis. And I would refer to the guarantee national decision of this Court in the Unica case, Texas Supreme Court, dealing with a professional services exclusion in a policy where there were allegations of both professional negligence and general negligence in the court held under those circumstances. You got to defend. You can't make a finding like the district court here did, which is well as between the two, I say trademark infringement is the underlying source of all. This Court in Chevlar v. VPG in 659F seconds 695-700 held that use of confusingly similar trade dress descriptions of origin, descriptions qualify as a violation of trade dress. Here we've got descriptions of that are alleged to falsely attribute these services and description of them to ART instead of Laney. The I believe I'll reserve my time for rebuttal unless there's anything. Mr. Kroszno. May it please the Court. My name is Wade Kroszno and I represent the appellee nationwide. I want to make three main points today for the Court, which I will summarize first and then address in more detail as time permits and as the Court permits. First, the underlying claims against Laney Chiropractic are based on trademark infringement, not trade dress or slogan infringement. The underlying complaint asserts claims that are either expressly labeled as trademark infringement or are expressly based as a factual matter on such infringement. What about false and misleading advertising? If you look at the factual allegations under that, they relate to trademark infringement and multiple references to trademark infringement under that. If you look at the entire complaint, for instance, there are 21 separate references by my count to trademark or trademark infringement. And in contrast, the complaint contains zero references to trade dress or slogan, not to mention trade dress infringement or slogan infringement. But did your client even have a slogan? Well, that's not alleged in the underlying complaint. There's no allegation about anything being a slogan or being described as such, and there's also no allegation about what Art's trade dress was, what the overall appearance of its website was, as opposed to just mere descriptions of words. So there's not any allegation about what that trade dress was. If you look, and I think that's the biggest stumbling point for that, because for that argument, because in the... What about the broadest characterization that your website was similar to ours, and definitionally a website is a promotional device, therefore it's advertising? Well, I don't see what the allegation is, is that there was a use of Art, which is a trademark, and synonymous terms on Laney's website, but there's not an allegation about what was on Art's website, either as a matter of just specific terms or as a matter of what the overall appearance of the website was. Soft tissue techniques isn't said to have been an advertising idea that you put on your website? Well, there's an allegation that that was a description put on the website, but it's not, you know, in order ultimately to be covered, it's going to have to be a trade dress or a slogan infringement, because we have this broad trademark exclusion that also applies to anything that arises out of trademark, and in that situation, what they seem to be saying is you had the terms Art and similar terms that were trademark terms that you were using, and then you switched those terms but still said the same thing, and so that is ultimately going to be trademark infringement or at least a rise out of trademark infringement, and it's not trade dress or slogan infringement. And if you look at this, I think ultimately the court's decisions, two decisions are going to control this particular case. The first is sports supply, where the court said that trademark infringement is not an advertising injury because it merely distinguishes or identifies a product rather than promotes it, and that's binding precedent, and I think forecloses any argument along those lines. So then I think you're having to go to the issues of trade dress infringement or slogan infringement. The test master's decision by this court is, I think, dispositive on the issue of trade dress infringement, because there the court explained that trade dress is distinct from the image and appearance of a product. Now, the court then went on to recognize that there is an issue about whether you can have something called a website trade dress, and but the court emphasized that there has to be something, there has to be an aesthetic similarity at least in the websites, and so if that's the case, it's not going to apply where there's an allegation that about a description on a website, particularly when there's a lack of any information about what is actually on art's website. Now there was a reduced argument consistent with the decision in our KIPP architecture case. In which case, Your Honor? The KIPP case, I may be mistaken. About the houses? Yes, the houses case. KIPP Flores, where the house was part of the advertisement. The product itself is an advertisement. Well, I apologize on the KIPP Flores case. It may not have been substantially presented in this case. You had three points you wanted to make. You're still on the first? Well, the first one was that this is a trademark infringement and not a slogan or trade dress infringement. Not only is there no allegation of trade dress infringement or slogan infringement, there's not even a mention of the terms trade dress or slogan. The second point is just merely on the issue about advertising injury. That the sports supply decision is dispositive there. The third is that there is no covered trade dress infringement here in the absence of an allegation about what the trade dress was on the website of art or otherwise. And that's what the test master's decision would indicate and we would just ask that the court follow it. Now there was a reference here during argument about something about the EPN program and that being a software application or some sort of website reference, but one thing it's clear is that the EPN program are alleged in the complaint to be a trade secret which is excluded under the intellectual property exclusion and those allegations, when you look at the causes of action asserted, that cause of action of trade secret infringement is alleged only against Dr. Laney and against the separate company NCS and is not an allegation against Laney Chiropractic which is the only party to this appeal. So basically all your insurance policy is covering is that somebody using the term like describing a beverage as the real thing? Well there is, our policy is certainly covering, you have the whole property damage and bodily injury coverage. Well I understand that. On the advertising injury side, we are covering all sorts of advertising injury relating to misrepresentations and things like that in your advertising, but there are significant carve outs for things like trademark infringement and related claims. Has this particular language been construed by other courts? Well there was similar language construed in the test masters decision by this specific court. Yes, there are decisions construing this language or similar language by other courts. We do think test masters is dispositive on the issue of trade dress infringement. Now there is a separate issue, an argument being made here about slogan infringement and again I come back to the point here that there is no cause of action for slogan infringement asserted. Now granted that's not dispositive. If there were a factual allegation of slogan infringement, then that could potentially invoke coverage, but here you don't have that. You don't have any reference whatsoever to a slogan and what they are now trying to claim after the fact is a slogan certainly doesn't sound very much like a slogan. I'm no advertising guru, but the phrases soft tissue technique and things of that nature sound more like a description of services and not what the cases say you need, which is some sort of distinctive cry, motto, or catch word or catch phrase and there's just nothing catchy about those terms that they're talking about. They're either allegations of straight trademark infringement or use of synonymous terms that do not rise to the level of a slogan and you look not only at the Hugo Boss decision out of the second circuit which said that a slogan can't basically be just a reference to the house mark or the product mark and you in particular look at the sixth circuit's decision about saying something needs to be distinctive, needs to be a catch word or a catch phrase and these phrases are simply descriptive and don't rise to the level of anything that is distinctive or catchy or a slogan. So in the absence of any sort of slogan infringement claim, in the absence of any reference to a slogan anywhere in the complaint, you really have to be straining to get to the position that there is some sort of slogan being discussed here and as the court noted in the test master's decision and you can't read facts into the underlying complaint and you cannot imagine factual scenarios in order to trigger the duty to defend and I think that's what you would have to do here to come up with any sort of trade dress or slogan infringement. I will point out finally that in these issues dovetail somewhat because of the wording of the advertising injury definition and then the intellectual property exclusion but there is a separate exclusion that applies broadly to claims based on trademark infringement and infringement of other intellectual property rights. There is the exception for trade dress or slogan infringement which we do not have here and so that exclusion should apply and there are two other claims that are contract related claims that they do not seem to be contesting on appeal are barred by the contract exclusion and so when you add all of that up, I think you're in a situation where there is no coverage for advertising injury and it's also barred by the intellectual property exclusion and we would simply ask that the court affirm the district court's judgment and if the court has no further questions, I will sit down. All right. Thank you. Mr. Hoyt. Thank you, Your Honor. Your Honor asked what about false advertising and the response was well it's just advertising through use of a trademark and again perpetuating the error of the district court which how can you say that the false advertising was simply a trademark when the allegations specifically say the marks were taken out of the ad and what was left were descriptions that were so similar that it still caused confusion and again perpetuating the error saying counting the number of times there's a reference to the label of what you're calling this claim and counsel said well there's zero reference to a slogan infringement. That's relying on the label, not the fact allegations. If the allegations are that slogans were used and which are catchphrases designed to attract attention to your service, that's a slogan infringement allegation. Soft tissue techniques is a catchphrase? I believe so. So is ART. But I mean isn't all massage soft tissue techniques? If you're using a catchphrase in your advertising, soft tissue technique, that's a phrase designed to draw attention to what you're doing and the benefits of that service. Well, I mean I can see why active release techniques, that's their trademark, right? Right. But soft tissue techniques is just, it's pled here. I'm looking at the complaint. Correct. And it's highlighted and underlined but I assume that in the website it was not highlighted and underlined. I don't believe so. Right. So it was, I mean I'm thinking of all the competitive advertising for various kinds of medical remedies and procedures and things like this and, you know, there's no way you can describe them without describing what they do to the body. Let's roll with active release technique then as a slogan. Where does that get us? Is it excluded or is it covered? Well, it's excluded as a trademark but if it's also a slogan, it's covered under the exception. If you've got allegations of both, you can't make a determination as to what's, you know, what's what's what so otherwise the exception has no meaning if it's both. I would defer to more, to other people on that subject but I would just again look at the allegations and what it says is they use the term active release techniques which is, would be a violation of the trademark but then they change their website to try to make it less of a copy and describe their technique as soft tissue techniques. Right, but there's an allegation that both were confusing because they do allege they use the trademarks to confuse and the trademarks as active release technique. If that's also a slogan, the exception kicks in because it's an exception to the exclusion and you've got coverage for the slogan infringement. And I've cited you the cases where you've got mixed allegations, otherwise they're reading the exception out of the policy. And as to the other phrases, they said they're synonymous with active release technique. And once again they're focused on the visual appearance of the ad, whether it's visually, whether it's alleged to be visually or image copy. First of all, that's not required for the trade dress and slogan infringement aspect, which is only if you're infringing with the descriptions in your ad. But even if you go with their argument that there has to be a visual appearance, that reads out of trademark or trade dress infringement the use of words to copy somebody's description. Well, what's your best case for saying you can have trade dress infringement just by descriptive actions, by descriptive word? By the descriptions? Yeah. Well, I think the definition of trade dress in all of the cases we've discussed. Well, trade dress, you think of the mannequins, you think of the advertisements, the decals, you know, graphic things. And, of course, there's nothing graphic in here. There's just reference to some web. Well, the Lanham Act talks about trade dress in terms of. . . But that's false advertising and that's excluded by the policy. False advertising? I thought advertising was excluded. That's the coverage. Advertising ideas. Advertising is coverage. Advertising ideas. Misappropriation of advertising ideas. Falsely claiming in your ad that you're the source of these services. So all of the cases we've cited describe trade dress. Let me quote something out of this Court's decision in Sports Supply on slogan because I think it's instructive. This Court cited in Sports Supply, cited Texas Business and Commercial Code, annotated section 16.01 sub A5, and said a trademark includes a word, a name, a symbol, or a slogan. So this Court has recognized a trademark can be both a trademark and a slogan. And Hugo Boss kind of acknowledges that where the policy used trademark slogan. And on that note, thank you for your argument. Thank you. The Court will stand in recess.